Is your opposing counsel here the same person who persuades all these district judges to reach the wrong conclusions? Opposing counsel and I have many cases with each other, your honor. We know each other well. Your honor, allow me to introduce myself. I'm Scott Hubbard. I represent appellant Chris Kohler. I know the court's read the briefs and are familiar with the issues. So unless there's any questions for me, this one has a slight twist from the one earlier and so far as we were sanctioned a large amount of dollars for advancing frivolous arguments by Judge Plosner. And with that, if the court doesn't have any questions for me regarding it, I'll reserve the rest of my time. Tell me a little bit about the part. I have a question or comment. I don't mind you reserving time, but what I would like to avoid is a situation where you reserve 15 minutes of time and your opponent gets up and argues and he hasn't heard any argument from you. Your argument is entirely new stuff on rebuttal that he has no chance to respond. So I think it might be really more helpful for you to address your primary issues. Fair enough, your honor. I was just about to ask you about the parking lot. Tell us your parking lot argument. The court issued the order asking us to be prepared to discuss it. The simple fact is, and we did a 28-J letter on, or I prepared a 28-J letter on that subject yesterday. And what it boils down to is opposing counsel has a heavy burden of establishing, or excuse me, not opposing counsel, defendants have a heavy burden of establishing that a case is moot. With respect to the declaration in question, the defendant says that, or the witness says that we entered into a settlement agreement with the client, or with their co-defendant. They believe that includes remediation changes. And they made remediation changes and we haven't complained. Now the simple fact is we sent someone out there. If the court follows Pickering v. Holiday Quality Foods and remands it for a factual finding of mootness, we are prepared to show photographs that architectural barriers still exist outside. But why does the tenant have any control over the common areas? Why doesn't what? Why does the tenant have control over the common areas? I mean, absent a provision in the lease to the contrary, I don't understand. There's a case in this circuit called Bodasan v. Paul McNally Realty. And it explains how California lease agreements cannot dictate ADA compliance. Now in this case, or ADA liability I think would be a better term. So in this case, Congress created liability for owners, operators, landlords, and tenants. They're not the owners. Of facilities, but they are the tenants. Of lease, of common space? They do lease the common space, yes, Your Honor. Now under the lease agreement, they explicitly state that they're not responsible for ADA compliance. Well, I'm not sure if they explicitly state. They say that we're not responsible for ADA compliance in the common areas. But the simple fact is you can't use lease agreements to say what you are and aren't going to be responsible for under the ADA and have that lease agreement bind the disabled plaintiffs. So what do they lease in the parking lot? Parking, common areas. Do they have specific areas set aside for their parking for their customers? No. At least, again, I don't like to shoot from the hip. I don't believe so. Well then what is it? I mean, we have lots of sort of malls in California. We have lots of places with large common parking lots where lots of stores have bought this huge parking lot. What is there in the law that says if you have a big central parking lot and there are stores around it that the stores have any capacity regarding the parking lot? Indeed. To find that, the route is in the definition of public accommodation and facility. If you look to the Department of Justice's interpretive manual on what constitutes a Let me take a step back. The general rule of the ADA is that owners, operators, landlords, tenants shall provide disabled individuals with full and equal enjoyment of public accommodations. If you go to the definition provided in the interpretive manuals or the interpretive regulations of what constitutes a public accommodation, it says basically a parcel. The property. The boundaries of the property. That's why an owner of parcel A can't be held liable for ADA violations that exist on property B. It has to be within the bounds of the property. So you have bed, bath, and beyond. Rent a place. Rent a space in the mall. It includes parking. That's part of their lease. They have access to the common areas. That's part of the lease, too. Doesn't everybody have access to those common areas? Indeed. And then bed, bath, and beyond. Leasing this property. Leasing the entire area. Throws in the contract that the landlord shall be responsible for maintaining the common areas. They are still leasing. I don't quite understand what they're leasing. Do they lease the entire parking lot? That is, from what I've seen, yes. Based on the excerpts of record. They would be liable for an ADA defect half a mile away at an entrance to a totally different store. I just quite would like to get an idea of what responsibility they have for this large general common parking lot. I would say, based on the statute and the Department of Justice's interpretive material, which we've included, but we haven't cited the one on what defines the property that's liable, that, yes, a defendant who leases a property that has common areas, including parking, would be responsible for the architectural barriers within that site or facility. Is the lease in the record? Part of it is, Your Honor. The defense didn't include all of it in. I assume you're relying on the lease. I am. And did you introduce the lease? We introduced the aspects of the lease that say that they lease the property and that the property includes parking and that the parking falls within the common area. Actually, they did, Your Honor, to argue that they weren't liable for parking in the common area in front of their store. So those key provisions that we're discussing are in the record. And you say that those key provisions say that they do lease parking spaces? They do, in front of the store. And they also throw in the provision that says that the landlord isn't responsible for that. But, again, I'd like to check the record on that. I realize this is not the case. Suppose there was an indemnity agreement between the tenant and the landlord. Could the landlord assert that it was in violation of public policy and that it indemnified the tenant? No. That was the Bodasan case. I mean, they could, between themselves. The landlord… Okay, never mind. I'm going to guess this is a digression and it's complicated. Well, no, actually it's a valid point because if you look to the Bodasan case, the Bodasan case says that the landlord and tenant can do whatever they want to between themselves, but their state law contract can't bind the disabled plaintiff. So the lease agreement, let's say in the court's example, the lease agreement says… I understand. Yeah. So, counsel, in Bodasan, did that involve the owner of the parking lot trying to contract away his obligation or its obligation under the ADA to keep it obstruction-free? Yeah. Bodasan… Yes, partially. The Bodasan opinion says that it was a discussion on landlords attempting to eliminate their liability to disable plaintiffs for architectural barriers in public accommodations where they include in the lease agreement that the tenant will solely be responsible for architectural barriers on the property. This is the reverse aspect. In the common area, right. But what's your precedent that suggests this reverse, what you call reverse aspect makes sense? Because I can understand how the owner of a big shopping mall has to keep the common areas clear for anyone's use in the public and can't put some contract provision in that shifts that liability away to the tenants. But I have difficulty understanding how tenants should be liable for something in the common area far away from them that they don't control under your theory that just, well, they're leasing the whole lot. There are two specific points in the… or who's responsible for ADA liability. One is operators, and this court has defined, and the Department of Justice in turn has defined operators as individuals who have control over the public accommodation. But as a separate category, they include landlords and tenants. Now if you were to read landlord and tenant as incorporating the operator requirement, then it would make the language superfluous. Well, if they were the tenants of the parking lot and you're saying they're the tenants of the entire parking lot? If they have specific spaces before the store where they said they included that, that would be one thing, that when they lease the store and they lease parking spaces in front of the store. But that's not what you're saying as I understand it. No, I'm not. And let me, if I might expand upon it, anyone who's gone Christmas shopping knows that you can park at one side of a shopping center and wind up halfway across. Now let's assume this isn't the facts of this case. I'm just using this as a hypothetical. Let's assume that they parked at one end of the Lake Elsinore shopping center and then walked all over to, walked over to Bed Bath & Beyond. And let's assume that the parking spot where they parked was inaccessible. Now Bed Bath & Beyond, by its terms of the lease agreement, leases the common area parking. Now in theory, you could argue, well, it's not in front of their property. But that's making plaintiff, well, no, let's not go there. But they're still part of the bounds of the public accommodation which Congress and the Department of Justice imposes liability on. Every store. Counsel, you're arguing that every, you're arguing that every single tenant in a giant shopping mall, every single tenant there would have responsibility for the full parking lot. Yes. And you're turning malls into condominiums. I'm not certain I would go, I wouldn't say I am, but I'm pretty sure Congress did. That's not, you're saying it's not, but it's based, or are you saying it's based on the lease or it's based on just purely the statute? I'm saying it's based on the lease. They didn't have to lease us. No, I know they didn't have to. The question is, is your argument based on the lease? It's based on the lease, yes. Not their control. And not on the statute. Without the lease, it's based on the statute to the extent that it covers tenants. But without the lease, you would not have this argument. Correct. If it was just based on control, I would not have, I could not. So your argument here is based on the lease, so we have to know what the lease says. Yes. I can't argue that one. So, or maybe I shouldn't. So some claims were, tell me about the attorney's fees and the other claims. Well, Your Honor, I have 45 seconds remaining and I really wanted to save more time than this. I would enjoy discussing that with you, but. Whether you enjoy it or not is not the issue, but we'll give you a few minutes of rebuttal and then you may want to consider Judge Motz's question. Thank you, Your Honor. Whether you enjoy it or not, you may want to answer. Counselor, this argument seems to have simplified toward the end. The issue seems to be whether your client, as a tenant, assumed some responsibility for control of the parking lot. Agreed, Your Honor. Agreed. And that's, that really, one of the primary issues that we faced was in the trial court level, we submitted evidence, competent evidence from a person at Bed Bath & Beyond authenticating portions of the lease that demonstrated that we did not have. What's the lease say? The lease defines the box of the store, of course, as a lease premises, but then it says that the tenant will pay into a common area maintenance pool, which is a proportionate share of the tenant's responsibility for contributing towards the landlord's cost of maintaining the entire facility, including the parking lot. So you lease space and then you contribute to the common area? Yeah, exactly, to what we call a CAM, common area maintenance pool, just as every other tenant does. And that specifically, that also attributes the responsibility of maintaining, repairing, and keeping in compliance with laws, the common areas directly to the landlord. Now, I understand that the Bodicen case focused on extending liability to a landlord for tenant areas. And that makes sense to me, Your Honors. And the reason it makes sense is because a landlord does maintain and retain ultimate control over the property. It owns it. It has a reversionary interest, meaning that when the leasehold expires, it goes back to the landlord. But that's not the same with a tenant. And Your Honors pointed out what I learned in law school was the reducto ad absurdum, which is taking a concept to its logical extreme. And when we have a situation here, or any mega mall, let's just take one of these Westfield mega malls where you have hundreds of thousands of rentable square feet, all kinds of tenants, big parking structures. Are you going to impose on the cell phone case kiosk that pays 0.1% into the camp pool obligations for 20 restrooms? I would assume, because they don't have any assets. Well, precisely. And not just that. It's just not fair or reasonable. Now, the Bodicen case does raise a concern. And the concern is, and it was raised in Mr. Hubbard's brief, was that there is a potential that some crafty landlord or tenant could somehow enter into some type of collusive agreement with a shell organization for the purposes of avoiding its ADA obligations to remove barriers that are readily achievable. Well, first of all, obviously there's no evidence in the record here to suggest collusion. Bed, Bath & Beyond and Lake Elsinore Marketplace are completely distinct entities. But more importantly, that collusion has a remedy. Common law has fashioned remedies for such collusive behaviors under doctrines such as alter ego, success or liability. If people play nunchuck games with corporations, the courts can address it. Can I go back for a minute about the lease? Yes. The lease says that the Bath B&B will contribute to the cost of insuring that the parking lot complies with all laws. The Bed, Bath & Beyond will contribute to the common area maintenance pool, which is a fund for the taxes and the maintenance of the entire shopping center as a whole. Not that Bed, Bath & Beyond will specifically allocate a certain percentage of what it contributes towards one expense or the other. Then it says the landlord is supposed to take that money and use it for the common areas, which of course makes sense, because as we know... You did something when you described it before about complying with all laws. Well, that was the obligation that the landlord assumed in the lease to comply with all laws, regulations and maintain and operate... What does the lease say about what the contributions were? I think that's what Judge Reinhart's office... Oh, about... I don't have the specific language in front of me, Your Honors, and I can't recall, but I can generally tell you that it's a common area maintenance pool that talks about the cost of maintaining, insuring, paying taxes on the landlord's expenses for handling the common areas. Which, of course, the landlord has the ultimate obligation and control. That raises a good point. If we don't have control over these common areas, how is an injunction against Bed, Bath & Beyond going to be enforced? You could issue 100 injunctions against Bed, Bath & Beyond. It can't re-stripe the parking lot. It doesn't have the right to. And that raises another issue. Well, it can sue the landlord for declaratory judgment. We could definitely put into motion a series of lawsuits if you allow one person to sue another for liability of a third, where we could set into motion I think the more direct cause of action... But you're not entirely powerless. Indeed. But the direct cause of action is against the marketplace. And I think Mr. Hubbard agrees. He sued Lake Elsinore Marketplace. He settled with them. You can't sue more than one defendant and there may be joint liability. That's not unusual. Indeed. And you, Your Honor, make a good point. But we have been focusing on 42 U.S.C. 12182A, which talks about the liability of a operator or lessee, lessor, of a public accommodation. I think there's another analysis that goes here. And that is the simple fact that as this Court has recognized under the ADA there's only one remedy and that's injunctive relief. And for injunctive relief to be granted there needs to be a remedial benefit. Otherwise, obviously an injunction is hollow and a court won't grant it. Here, there would be no remedial benefit. Again, if you were to enjoy... enjoying Bed, Bath & Beyond I guess to go and sue the landlord to put them in default on their lease and then have the landlord go and repair it. But to enjoy Bed, Bath & Beyond under the ADA to repair the common areas that injunction would be hollow. There would be no remedial benefit. So if the ADA claimed directly against Bed, Bath & Beyond is not viable and it really stops right there because Bed, Bath & Beyond just as that kiosk selling cell phone cases in the mall has no power to go fix these common areas that resides exclusively with the landlord. I'm very happy this is like law school but suppose Bed, Bath & Beyond did not make its contributions and the landlord said we can't get the appropriate slope because we don't have enough money. Could there be an injunction against Bed, Bath & Beyond to enforce a contractual obligation to buy an ADA plaintiff to enforce the contractual obligation? I think that's a little circuitous Your Honor. It sounds like a great law school exam question but I don't think that there's a direct cause of action from an ADA plaintiff for Bed, Bath & Beyond. The question distinguishes what you say you lease premises and then you have a contractual obligation. And you know Judge Liu looked at the lease and he applied the Black's Law Dictionary of Lease Possessory Interest and as we know under California Civil Code Section 1644 and this is a California lease you look at the ordinary meaning of these terms and he found that we didn't lease the facility and the more I think about it it's not a lease maybe it's a license maybe it's something else but it's definitely not a lease we're not leasing that area we have a lease to premises That question is a legal question Correct So it's de novo review Indeed Indeed So Your Honors Again We did He did raise the issue about the Howells Declaration And we did receive a supplemental brief yesterday while I was on a plane down here it was filed Submitting new evidence unauthenticated evidence from complainant with pictures of the facility at some unspecified time by some unspecified person First of all obviously we object to that letter but more importantly it doesn't talk about mootness back in 2012 You raised the question you asked us to be prepared to address mootness and the Howells Declaration does in fact state that there have been barriers remediated and that parking lot areas have been fixed Now it's my understanding that this court has held that it that once jurisdiction is challenged it's the plaintiff's burden not the defendant's burden to establish that there is in fact jurisdiction You prefer to have this case resolved on the basis that either there's no jurisdiction or there's it's moot rather than demerit Well your honors I don't I presume that what Judge Liu found be affirmed because we believe that's correct Well if it's moot we wouldn't be and I would say that if Judge Liu were to have done a 12B1 analysis under the circumstances because in response to the Howells Declaration we received no proffer of evidence My question is that you're seeking to have us decide this case on the grounds that it's moot Is that your position? Your honor Two fold First I'm seeking I'm requesting that this court affirm or find the same thing that Judge Liu did Even if it's moot? If however Yes the court is not inclined to rule the same way No you can't say if you rule for us it's not moot if you rule against us it is moot Well I think the mootness issue and I'll address that I'll address your question directly The moot issue it's two fold it's not just moot it's merged It's merged Dismissed Go ahead The case was moot Counsel If it was moot then we would dismiss Correct Did you want us to affirm the district court or to dismiss the case as being moot I would prefer that your honors affirm the district court And the reason I would prefer that I understand why you would prefer it But Do you think the case is moot Don't we have to decide whether it's moot Well your honor in all fairness we presented evidence that the barriers were mediated and that evidence wasn't rebutted and under the Oliver case that does mean it's moot Alright It's taken you a long time to say we think the case is moot Well it's unfortunately your honor there's a couple other points I wanted to Well if the case is moot are you entitled to attorney's fees Well not the entire case is moot just that one specific issue Alright so on that issue you're not entitled to attorney's fees Well your honor if the entire case was dismissed under mootness then the issue would be obviously whether the trial court had jurisdiction to address attorney's fees but in this circumstance it wouldn't be that the entire case was dismissed it would be that one particular claim was just like the state law claims but the other claims that were being prosecuted were still subject to being found as being filed or maintained without reason Alright and which of those do you think are frivolous let me pull up my notes on that but before before you get to this is the case of concern was the remediation done in response to what the plaintiff brought to your attention the parking lot wasn't remediated by us the parking lot was remediated by Lake Ellison marketplace and it was done according to the Howells declaration in response to a settlement that they reached with plaintiff's attorney and plaintiff's counsel and plaintiff My concern is if they bring complaint and issues are resolved in their favor by remediation which boots that claim and there are one or two claims left that you prevail on and the district judge awards you attorney's fees something seems backwards about that you just raised a point and it really clarified an issue in my mind and that is the claims may be moot with regard to Lake Ellison or marketplace but they are still frivolous to us and the reason being is we should never have been asserted against them it doesn't change the fact that they should never have been asserted against us I understand the parking lot argument which we put aside what other claims do you think are frivolous the strike site clearance for sure there is no basis in law logic or reason for the strike site there are some arguments about why somebody would assert issues like that and I can revisit those but they are in our papers basically that it is a lawyer's construct to propagate litigation second of all we have plaintiff's counsel and plaintiff suing over the location of a spare toilet tissue we have one that is fully compliant we also have a paper towel dispenser requiring the use of twisting pinching and grasping the final contention is too high not that you can't that wasn't the barrier they asserted against us they did try to assert that it was too high at summary judgment but because of the Oliver ruling it wasn't considered however the barrier that was found frivolous was the one that required grasping pinching and plaintiff has full use of his hands I depose plaintiff very nice gentleman but he has full use of his hands and I understand that the taste of imposing defense attorney's fees in one of these cases it it's a very hard decision to make but I would posit that it's very important it's critical in fact the ADA is a noble cause it can't be diluted by even the perception of frivolous lawsuits frivolous claims it just can't at least it shouldn't be quantitative it actually might help you I just don't know where the time was spent I don't think you can just say they prevail on 80% of the claims they get 80% of the fees you raise a very important issue I'm going over but I'd like to address it Fox vs. Vice was not raised by Mr. Hubbard down below at the trial court  Vice case that says you have to say show but for however even though we're now criticizing Judge Klausner for not citing Fox vs. Vice case although Mr. Hubbard criticizes Judge Klausner the simple fact is we met the standard I look at page 2216 of the Fox vs. Vice opinion and the Supreme Court says the trial courts need not and should not become green eye-shaded accountants very nice imagery they say the essential goal in shifting fees is to do rough justice not to achieve auditing perfection so trial courts may take into account the overall sense of a suit and may use estimates in calculating and allocating attorney's fees and the appellate court must give substantial deference to these determinations I'm all in favor of that of course and you know your honor simply stated we would not have gotten past or even gotten to the answer stage at this lawsuit but for the frivolous claims the two claims that were moved the bathroom door closure and the under sink pipes bathroom we could have done that very quickly this case would never have gotten to the answer stage let alone past the answer stage every single thing the depositions the summary judgment motion the motion to strike affirmative defenses that Mr. Hubbard filed the motions to consolidate all of that was perpetuated by the fact that we had to litigate over issues that were not viable cognizable ADA claims and again that was my point that was why we believe that the court must affirm a sanction of fees against somebody who sues over these things we're here today I see the other oral arguments where we're talking about Mr. Hubbard's office and a lot of his repeat clients like Mr. Kohler exploiting these ambiguities that don't affect disabled access they seem to be achieving a fair amount they succeeded not against you but it's not exactly the way you describe these clients they're solving problems I agree and I agree that ADA is a noble cause and we as a law firm we also counsel clients on complying with the ADA we're a firm I'm sure you're very noble and the plaintiffs are not very noble but these specific claims they warrant fees because these specific claims were unreasonable and the trial court found that some of them may have been unreasonable some of them may not have been you think their interpretation of the regulations and 48 feet for the bench you think that's marvelous well that's not part of our that's not part of the bench tissue is not part of our case but the strike side wall clearance is and again we talked about that in our papers and I'd be more than happy to talk about it and the toilet paper claim incorporates California statutes well it's not the toilet paper claim incorporating California statutes it's the fact that the toilet paper claim that they're asserting is over this spare toilet paper if you look at the excerpts of record you will see that the toilet tissue dispenser there's two of them there's one that is not in this lawsuit when was that issue first raised the summary judgment the which issue the height issue the paper towel dispenser my recollection is correct and I may be wrong but I'm pretty sure that it was raised for the first time in connection with the summary judgment motion in Mr. Kohler's declaration alright thank you thank you your honors I'd like to deal with them in reverse order for obvious reasons first frivolousness is determined at the time the complaint is filed the simple fact is if the court disagrees with me on the lease agreement we didn't have the lease agreement when the complaint was filed we didn't know what areas that Bed Bath & Beyond leased in the common areas until we got a copy of the lease during litigation so it's hard to say that they never should have been included in the lawsuit I don't know if I really didn't want to jump to the lease right out of the chute but I will defense counsel said that it's not a lease in fact that it's a more of a license actually if you look to the very SER page 17 if you look to the very first paragraph it says or the very first title it says lease agreement this lease agreement is entered in I think it was only by analogy that he said it was a license fair enough second if you look to the common areas that they are leasing all areas in the shopping center which are from time to time available for the joint use and benefit of tenants and their respective employees business agents blah blah blah including but not limited to all parking areas parking spaces sidewalks entrances exits by definition they leased the entire shopping center it's only when you go maintenance of common areas that's where the landlord is burdened with it under the lease agreement they rented they leased the entire shopping center they then used that lease agreement to limit their liability of the common areas and it's you can't say that we're frivolous for arguing that what's good for the goose is good for the gander and if owners can't use lease agreements to limit ADA liability against tenants then tenants shouldn't be allowed to use lease agreements to limit ADA liability against owners it just against me so fair enough inarticulate but second back to the frivolousness strike side clearance it's not that we made it up and it's not we didn't have a good basis for it I hope the court won't say it's frivolous just because it disagrees with me the toilet tissue dispenser that was a pure issue of California law we said so in on a claim that the court never considered pinching and grasping up high this is hard it is they found this argument so frivolous that they added a lowered it is not based on actual knowledge nor does it say that barriers have been removed at the facility it says on page 261 I am informed and believe that as of 2012 more than six months ago never communicated to them any objection or complaint regarding the adequate remedial work it is based on information and belief not personal knowledge or so you know say what you want about us we have the courage of our conviction and there's a method to our madness and that's it alright thank you counsel thank you this argument will be submitted
judges: Motz, Reinhardt, Gould